UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARY P. HENDERSON, | ) | NO. CV 16-6338-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

Plaintiff filed a complaint on August 23, 2016, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on October 6, 2016. Plaintiff filed a motion for summary judgment on February 17, 2017. Defendant filed a cross-motion for summary judgment on April 19, 2017. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed August 25, 2016.

///
///

**BACKGROUND**

Plaintiff, who stopped working in 2007, asserted disability since February 10, 2013, due to "stage unknown lymphoma cancer" (Administrative Record ("A.R.") 150, 382, 384, 396).[1] An Administrative Law Judge ("ALJ") found Plaintiff has severe "hypertension; sarcoidosis; status post lobectomy in remote past; status post left shoulder surgery; and asthma" (A.R. 18 (adopting medical expert testimony at A.R. 383)). However, the ALJ also found Plaintiff retains the residual functional capacity to perform work as a ticket taker and small parts assembler, and therefore is not disabled (A.R. 19-23 (adopting vocational expert testimony at A.R. 397-98)). In making this finding, the ALJ deemed Plaintiff "not fully credible" (A.R. 21). The Appeals Council considered additional evidence but denied review (A.R. 5-9).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind

---

[1] Plaintiff filed a prior application for disability insurance which was denied in June of 2009 (A.R. 144-45).

2

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

Where, as here, the Appeals Council considered additional evidence but denied review, the additional evidence becomes part of the record for purposes of the Court's analysis. See Brewes v. Commissioner, 682 F.3d at 1163 ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."; expressly adopting Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993)); Taylor v. Commissioner, 659 F.3d 1228, 1231 (2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"); Penny v. Sullivan, 2 F.3d 953,

957 n.7 (9th Cir. 1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole").

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[2] legal error. Plaintiff's contrary arguments are unavailing.

**The ALJ Stated Legally Sufficient Reasons for Finding Not Fully Credible Plaintiff's Assertions Regarding Her Alleged Subjective Symptoms and Limitations.**

An ALJ's assessment of a claimant's credibility is entitled to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Where, as here, the ALJ finds that the claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by specific, cogent findings. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995);

---

[2] The harmless error rule applies to the review of administrative decisions regarding disability. See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011).

4

but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must offer "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of malingering).[3] An ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal citations and quotations omitted); see also Social Security Ruling 96-7p (explaining how to assess a claimant's credibility), superseded, Social Security Ruling 16-3p (eff. March 28, 2016).[4] As discussed below, the ALJ stated legally

---

[3] In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases). In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

[4] Social Security Rulings ("SSRs") are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). Plaintiff observes that SSR 16-3p has superseded SSR 96-7p. See Pl.'s Motion, p. 7 n.2 (stating, confusingly, "This party does not contend that the new ruling [Ruling 16-3p] defeated any reliance on the old ruling [Ruling 96-7p]. Social Security Ruling 16-3p applies."). Defendant's analysis cites only to SSR 96-7p. See Def.'s Motion, p. 2 & n.2. The Court need not decide whether SSR 16-3p applies retroactively, because the appropriate analysis in the present case would be substantially the same under either SSR. See R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (observing that only the Seventh Circuit has issued a published decision applying SSR 16-3p retroactively, and concluding that
(continued...)

sufficient reasons for deeming Plaintiff's subjective complaints less than fully credible.

**A.  Plaintiff's Subjective Complaints**

At the administrative hearing on November 3, 2014, Plaintiff testified that she assertedly could not work due to alleged: (1) fatigue in her body; (2) pain in her joints, muscles, shoulders, and back that assertedly radiates down her right side; (3) swelling in her knees and ankles which allegedly requires her to sit down and ice or elevate her legs; (4) daily tingling in her fingers and cramping in her hands; (5) chest pains; (6) stomach pains; (7) frequent bowel movements (i.e., from five to 20 per day) assertedly due to ulcerative colitis; and (8) daily depression for which she was taking no medication and receiving no treatment (A.R. 385-93).[5]  Plaintiff said

---

[4](...continued)
SSR 16-3p "implemented a change in diction rather than substance") (citations omitted); see also Sherrard v. Colvin, 2017 WL 878063, at *8 n.6 (N.D. Cal. Mar. 6, 2017) (making similar observation).

[5]    At the hearing, Plaintiff denied ever having any psychiatric or psychological treatment, and denied ever having been hospitalized for psychological or emotional problems (A.R. 393, 395).  However, the record contains treatment notes from one inpatient psychiatric hold and notations that it was Plaintiff's second inpatient psychiatric stay.  See A.R. 174-93 (records from January 15, 2009 emergency room visit and subsequent hospitalization).  At that time, Plaintiff said she drank alcohol "almost every day" and had a history of cocaine abuse in remission (A.R. 187).  She was diagnosed with substance abuse (A.R. 189).  There are also records for follow up psychiatric treatment through May of 2009, during which time Plaintiff was prescribed Celexa and Trazodone.  See A.R. 194-99, 201-06, 312-23.  State agency physicians who reviewed the record in 2009 in
(continued...)

she has pain an average of four to five days per week, and the pain supposedly comes and goes throughout the day (A.R. 388-89). Plaintiff rated her pain at eight to nine on a scale of one to ten (A.R. 388).

Plaintiff said she could walk only a few blocks, which assertedly causes shortness of breath, could stand in one place for only 15 minutes, and could sit for only 15 minutes without feeling pain (A.R. 389, 392). Plaintiff said she could not squat, stoop, bend at the waist, or kneel (A.R. 391). Plaintiff said her medications affect her memory sometimes, and she allegedly has daily mood swings (A.R. 395).

Plaintiff also testified that she has been homeless for over five years and said she spends her days finding somewhere to go, "resting, sitting, and laying [sic]" (A.R. 387, 393). Plaintiff said she was living in the streets and occasionally staying with a family member (A.R. 394; but see A.R. 370-79 (Application for Supplemental Security Income dated May 4, 2013, wherein Plaintiff reported that she lived in a house, apartment, mobile home, or houseboat and had been so living since October of 2012)). Plaintiff denied drinking and claimed she
///
///
///
///
///

---

[5](...continued)
relation to Plaintiff's prior disability insurance application, and again in 2014 in relation to her current application, found no severe mental impairments. See A.R. 207-33.

7

had stopped in 2012 "prior to [her] illness" (A.R. 387).[6]

**B.   The ALJ's Reasoning**

The ALJ found that Plaintiff's impairments could reasonably be expected to cause some symptoms, but also found that Plaintiff's statements "concerning the intensity, persistence and limiting effects" of her alleged symptoms were "not entirely credible" (A.R. 20). As specific reasons for discounting Plaintiff's credibility, the ALJ stated: (1) Plaintiff had alleged disability due to "lymphoma" (cancer of the lymph system), yet there was no evidence of lymph node cancer – only sarcoidosis (inflammation of the lymph nodes) (citing A.R. 149, 264); (2) recent chest x-rays were normal (citing A.R. 329), and Plaintiff's physical examination was essentially within normal

---

[6] In a letter dated May 8, 2015 – after the ALJ's adverse decision - Plaintiff reported new health issues, claiming: (1) she had been experiencing severe pain throughout her body and swelling in both knees and ankles, which supposedly requires her to sit down to try to relieve the pain; (2) her lower back pain makes it difficult to stand or walk for short periods of time; (3) she had lost a "significant amount" of motion in her shoulders; (4) she has a burning sensation around her collar bone, and numbing and tingling and pain in her hands; (5) she was being tested by a specialist for blood in her stools; and (6) she has daily depression, an inability to concentrate, and headaches which assertedly require her to lie down (A.R. 170). Plaintiff stated she had been diagnosed with fibromyalgia, low back pain, rheumatoid arthritis, fatigue, and osteoarthritis (A.R. 170-71).

The Appeals Council considered Plaintiff's letter and looked at medical evidence post-dating the ALJ's adverse decision, but did not include such medical evidence in the record. See A.R. 5-6, 9. Rather, the Appeals Council informed Plaintiff that, if she wanted the Administration to consider whether she was disabled after December 17, 2014 – the date of the ALJ's decision – Plaintiff should submit a new application and provide the new evidence with the new application. See A.R. 6.

limits despite complaints of pain, anxiety, and being tired all day (citing portions of Arrowhead Regional Medical Center clinic notes and records from treatment provider Antonio Hurtado Rodriguez at A.R. 248-336); (3) the treating notes were devoid of any complaints regarding swelling in the knees and ankles, or frequent bowel movements (again citing portions of A.R. 248-336); and (4) Plaintiff reported daily depression but assertedly had not been treated for depression since May of 2009 (A.R. 21).

### C. <u>Analysis</u>

As discussed below, the ALJ's stated reasons 1 and 2 sufficiently support the ALJ's adverse credibility determination.

As to stated reason 1, an ALJ properly may discount a claimant's subjective complaints based on the claimant's exaggeration. <u>See Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001) (a claimant's tendency to exaggerate is an adequate reason for rejecting the claimant's testimony); <u>see also</u> <u>Larkins v. Colvin</u>, 2017 WL 24632, at *1 (9th Cir. Jan. 3, 2017) (exaggeration is a specific, clear, and convincing reason for finding diminished credibility); <u>Bickell v. Astrue</u>, 343 Fed. App'x 275, 277-78 (9th Cir. 2009) (same); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1987) (misrepresentations made by claimant in the course of pursuing disability benefits justifies the rejection of claimant's credibility). From the record (detailed below), the ALJ properly could find that Plaintiff exaggerated her symptoms and misrepresented in writing that she had cancer, even after she knew that she did not have cancer.

In a "Disability Report - Adult" form completed prior to
April 29, 2013, Plaintiff reported that she was being treated at the
Arrowhead Regional Medical Center for cancer (lymphoma) (A.R. 150,
153).  In fact, Plaintiff was never diagnosed with lymphoma.
Plaintiff had presented to the emergency room on February 18, 2013,
for a mass in her chest that was seen on a CT scan three days earlier
(A.R. 292).  A CT scan of her chest showed mediastinal lymphadenopathy
(enlargement of the mediastinal lymph nodes) (A.R. 292-93, 297).
Plaintiff was referred to the outpatient clinic for follow up biopsy
to rule out malignancy (A.R. 293).  A chest x-ray showed "chronic
obstructive pulmonary disease changes" (A.R. 296).

     Plaintiff returned to the emergency room on March 20, 2013,
complaining of acute chest pressure and shortness of breath (A.R.
283-84).  On examination, Plaintiff had tachycardia and a hoarse voice
(A.R. 284).  Plaintiff had a series of tests including portable chest
imaging for dyspnea which showed a large right paratracheal bulge
unchanged from February 18, 2013 (A.R. 278), a CT scan of her head
which showed sinusitis but no acute intracraneal abnormality (A.R.
279), and a CT scan of the abdomen, pelvis, soft tissue neck, and
thorax with the following interpretation, "Mediastinal lymphadenopathy
is stable since prior examination and causes mass effect on central
airways.  There is no lymphadenopathy in the neck, abdomen or pelvis.
Lymphoma is not excluded.  Consider biopsy if indicated.") (A.R.
280-81).

     Plaintiff followed up for outpatient treatment on April 16, 2013
(A.R. 271-77).  Plaintiff reported increased chest pain and pressure,

a dry cough, intermittent hoarseness, and exertional dyspnea (A.R. 271). She reported she previously was able to ride a bike for over 20 miles but now was having trouble doing so (A.R. 271). Her doctor planned a biopsy (A.R. 272).

A lymph node biopsy was performed on May 23, 2013, and indicated that Plaintiff has "[b]enign, granulomatous lymphadenitis most compatible with sarcoidosis" (not lymphoma) (A.R. 260-67) (emphasis added). Arrowhead Regional Medical Center follow up clinic notes listed a diagnosis of sarcoidosis on October 2, 2013 (A.R. 258-59). In a "Disability Report - Appeal" form completed sometime after Plaintiff's October 2, 2013 appointment, Plaintiff reported changes since her last disability report in that she reportedly could not sleep, is tired all day, and has a constant cough that is getting worse (A.R. 157). Plaintiff also reported that she had "new" conditions as of May 1, 2013, of "sarcoidosis stage 2, constant cough, chest pains, joint pain, mass on chest, [and] anxiety" (A.R. 158). Plaintiff claimed she had been seen at the Arrowhead Regional Medical Center on October 2, 2013, for "lymphoma," among other alleged conditions (A.R. 159) (emphasis added). In her "Disability Report - Appeal," Plaintiff did not disclose that prior testing had in fact ruled out lymphoma.[7]

Thus, the ALJ properly discounted Plaintiff's credibility based on evidence Plaintiff knowingly exaggerated and misrepresented in

---

[7] Similarly, on February 19, 2014, Plaintiff's then-attorney listed lymphoma as one of the reasons for Plaintiff's October, 2013 outpatient visits. See A.R. 164-69.

11

writing the nature of her medical condition.  In attempted avoidance of this conclusion, Plaintiff cites immigration cases holding that a petitioner for asylum must be confronted with an alleged inconsistency in the record before the inconsistency can serve as the basis for an adverse credibility determination (Plaintiff's Motion at 9-10, citing, inter alia, Soto-Olarte v. Holder, 555 F.3d 1089, 1092 (9th Cir. 2009)).  Plaintiff does not suggest how confrontation with her misrepresentations would have materially altered the record.  Moreover, "district courts within the Ninth Circuit have rejected the contention that the rule articulated in Soto-Olarte applies in the social security disability context."  Mulay v. Colvin, 2015 WL 1823261, at *6 (C.D. Cal. Apr. 22, 2015); accord Trujillo v. Colvin, 2016 WL 3453033, at *8 (C.D. Cal. June 20, 2016).  "Judges of the same district court customarily follow a previous decision of a brother [or sister] judge upon the same question except in unusual or exceptional circumstances."  Buna v. Pacific Far East Line, Inc., 441 F. Supp. 1360, 1365 (N.D. Cal. 1997).

    As to stated reason 2, an ALJ permissibly may rely on a claimant's normal test results to discount a claimant's allegations of debilitating pain and fatigue.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although a lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (same); see also Carmickle v. Commissioner, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); Social Security

Ruling 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . ."). Plaintiff's test results (detailed below), were mostly normal during the time period in issue.

Plaintiff presented for a rheumatology visit on November 15, 2013 (A.R. 249-50). She then had complaints of mild shortness of breath, chest tightness, a dry cough, joint pain and swelling (in both hands and in her left knee for two to three months), low back pain, and blood in her stool, among other complaints (A.R. 249-50). She was started on prednisone (A.R. 249-50). She returned on November 21, 2013, complaining of fatigue, pain in her shoulders, hands and knees (arthritis), anxiety, and dyspnea (restricted breathing) with an intermittent nonproductive cough (A.R. 251). She underwent tests showing "unremarkable findings" (A.R. 251). Her treatment provider noted that Plaintiff's reported episodes of dyspnea "may be related to psychological component" (A.R. 251). A pulmonary function test on November 13, 2013, showed Plaintiff's "lung capacity" and her "complete pulmonary function study" were within normal limits (A.R. 253). An echocardiogram from the same date had "limited visualization," but found only trace tricuspid regurgitation – all other measures were normal (A.R. 255-57).

A treatment note from February 21, 2014, reported normal findings on examination (A.R. 334-36). Plaintiff had a history of upper left lung removal 53 years earlier, bunion surgery on both feet, and left

shoulder surgery to remove a tumor in her bone (A.R. 334). She was diagnosed with hypertension, sarcoidosis by history, and cough (A.R. 335). At her next appointment on April 30, 2014, Plaintiff complained of "body pain that comes and goes" (A.R. 327). She was prescribed Naproxen and referred for rheumatology (A.R. 328). A chest x-ray from earlier that month was normal, and a CT scan showed only some volume loss in the left lung field, osseous degenerative change, thoracic curvature, a small liver cyst, and "anterior mediastinal soft tissue density . . . which is partially fat, but also contains several nodules, which may represent lymph nodes" (A.R. 329-31). Although Plaintiff returned on June 11, 2014, complaining of "nose constipation," she had normal test results (A.R. 325-26). At that time, Plaintiff denied chest pain, ankle swelling and respiratory tightness (id.). Plaintiff was also "negative" for joint pain, swelling and gait abnormality (id.).

The Court need not adjudicate the propriety of the ALJ's stated reasons 3 and 4. Assuming, arguendo, the ALJ's partial reliance upon reasons 3 and 4 was improper, the ALJ's credibility determination nevertheless would stand because the ALJ's remaining reasons are legally sufficient. See Carmickle v. Commissioner, 533 F.3d at 1163 (the infirmity of one or two supporting reasons for an ALJ's credibility determination does not require overturning the determination if independently valid supporting reasons remain).

The ALJ's reasoning allows the Court to conclude that the ALJ discounted Plaintiff's credibility on permissible grounds. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The Court therefore

defers to the ALJ's credibility determination. See <u>Lasich v. Astrue</u>, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for the decision are provided); <u>accord</u> <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1464 (9th Cir. 1995).[8]

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 2, 2017.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[8] The Court does not determine herein whether Plaintiff's assertions regarding her subjective symptoms and limitations are credible. It is for the Administration, and not this Court, to evaluate the credibility of witnesses. See <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750, 755-56 (9th Cir. 1989).